UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GWEN CAMPBELL,<br><br>  Plaintiff,<br><br>  v.<br><br>J.P. MORGAN SECURITIES LLC, et al.,<br><br>  Defendants. | Case No. 21-cv-09309-HSG<br><br>**ORDER DENYING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 4 |

Pending before the Court is Plaintiff Gwen Campbell's *Ex Parte* Application for a Temporary Restraining Order against J.P. Morgan Securities LLC and JPMorgan Chase Bank, N.A. (together, "Defendants"). *See* Dkt. No. 4 ("Application"). The parties agree that the underlying dispute in this case is subject to mandatory binding arbitration. *Id.* at 9.[1] Plaintiff did not file her arbitration action until December 9, 2021, nearly a month after emailing an unfiled version of the Application to certain of Defendants' employees, and a week after filing the Application. *Id.* at 2-3; Dkt. No. 4-1 at 2-3. "To ensure that arbitration is not rendered meaningless by irreparable harm while [arbitration] is pending," Campbell initially sought "a TRO (and, after the requested order to show cause, a preliminary injunction) enjoining Defendants, as well as their agents and employees, from:

  A. Soliciting, calling, or meeting with Campbell's clients who were not also clients of the Private Bank as of October 2020 on behalf of or for the benefit of the Private Bank without Campbell's agreement, except to the extent required by law;

  B. Seeking to expand the Private Bank's relationship with any Campbell client that was a 'shared client' as of October 2020 by offering any product or service that the

---

[1] Because Plaintiff included the application and the memorandum of points and authorities in a single filing, but numbered the two documents separately, any page references to this document or to counsel's supporting declaration are to the ECF page numbering at the top of each page.

        Private Bank did not already provide such client as of October 2021 without Campbell's agreement;

    C. Transferring any client assets from Campbell's care without Campbell's knowledge and client consent;

    D. Disparaging Campbell when speaking to any clients serviced by Campbell; and

    E. Interfering with Campbell's ability to service her clients by denying Campbell a reasonable work-from-home accommodation."

Application at 2.[2] Plaintiff alleges that Defendants are, among other things, poaching her clients in violation of her employment contract and federal and state law. *See generally id.*

As ordered by the Court, *see* Dkt. No. 9, Plaintiff emailed Defendants notice of the filed Application on December 2, 2021, *see* Dkt. No. 10. On December 3, 2021, Defendants filed an Opposition. Dkt. No. 13.

The Court held a hearing on December 10, 2021. Dkt. No. 31. For the reasons discussed below, the Court **DENIES** the Application for a Temporary Restraining Order.

## I. LEGAL STANDARD

"[A] district court may issue interim injunctive relief on arbitrable claims if interim relief is necessary to preserve the status quo and the meaningfulness of the arbitration process—provided, of course, that the requirements for granting injunctive relief are otherwise satisfied." *Toyo Tire Holdings of Am. Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 981 (2010). The standard for

---

[2] On December 13, 2021, after the hearing on the Application, Plaintiff filed an "administrative motion for leave to file revised proposed order," changing the substance of the requested TRO. Dkt. No. 33. Plaintiff now proposes an order providing that: "(a) JPMorgan shall not call or email any Campbell clients without copying or including Campbell on such communication; (b) Absent a client request to do so, the Private Bank shall not solicit any Shared Client for any product or service different in nature from any products or services provided by the Private Bank to such client as of October 21, 2020, except to the extent that the Private Bank already provides such products or services to the Shared Client; (c) Absent a client request to do so, JPMorgan shall not transfer any client assets from Campbell's care without client consent and notice to Campbell; (d) JPMorgan shall not disparage Campbell when speaking to any client; and (e) JPMorgan shall not deny Campbell sufficient technology support to maintain consistent remote access to JPMorgan electronic systems." *Id.* Setting aside the inefficiency of altering the request after the Court spent its time assessing Plaintiff's initial application and held a hearing, and after the Defendants responded to what was previously proposed, the new request suffers from the same problems discussed below. Accordingly, and solely in the interest of not further multiplying the procedural skirmishing in this case, Plaintiff's administrative motion is **GRANTED**.

issuing a temporary restraining order and issuing a preliminary injunction are substantially identical. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Either is an "extraordinary remedy" that the court should award only upon a clear showing that the party is entitled to such relief. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Plaintiffs seeking preliminary relief must establish: (1) that they are likely to succeed on the merits; (2) that they are likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Id.* A preliminary injunction "will not be issued simply to prevent the possibility of some remote future injury." *Id.* at 22 (citation omitted).

A court must find that "a certain threshold showing" is made on each of the four required elements. *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). Under the Ninth Circuit's sliding scale approach, a preliminary injunction may issue if there are "serious questions going to the merits" if "a hardship balance [also] tips sharply towards the [movant]," and "so long as the [movant] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

## II.   ANALYSIS

Because the factual details of the parties' dispute are involved, and stem from the intramural interactions between Plaintiff, Defendants and their (at least in some cases shared) clients, and because Plaintiff seeks an expedited ruling on her request for interim relief, the Court will not recount the record in detail. In short, Plaintiff, a current employee, primarily claims that since "October 2020, J.P. Morgan Private Bank . . . has made repeated and ongoing efforts to poach [her] clients, in direct violation of the contractual promises [J.P. Morgan Advisors] made to induce [her] to join the organization and the terms of [her] employment contract." Application at 9. The Application focuses on events involving three clients and one prospective client identified by pseudonyms. *Id.* at 14-19. Plaintiff also asks the Court to intervene in the manner in which Defendants provide remote working access, a request that seeks mandatory injunctive relief, as counsel acknowledged at the hearing.[3]

---

[3] Now Plaintiff has reframed this request to seek an order that Defendants "not deny [her] sufficient technology support to maintain consistent remote access to JPMorgan electronic

First, the Court is unpersuaded that much of the requested injunction is "necessary to preserve the status quo and the meaningfulness of the arbitration process." *See Toyo Tire*, 609 F.3d at 981. As opposed to a discrete injunction to bar a discrete action that would inherently defeat the viability of an arbitration proceeding (for example, forbidding the destruction of tangible property that is the subject of the dispute), Plaintiff seeks an order that essentially requires Defendants to conform their conduct to her view of the key agreements. *See* Application at 30 ("Defendants will not be harmed by the requested relief—they will simply be asked to live up to the promise they made."). But obviously, the nature and contours of that promise, and whether Defendants have lived up to it or not, are the central issues to be decided in the arbitration, and even at this stage they are hotly disputed. So even though the requested relief is framed as prohibiting Defendants from taking certain actions, in large part it seeks less to maintain the status quo than to change the aspects of the alleged status quo that Plaintiff believes violate her contract. In the Court's view, this is not a compelling basis for the exercise of its discretion in the "aid of arbitration" context. *See Lag Shot LLC v. Facebook, Inc.*, No. 21-cv-01495-JST, 2021 WL 2660433, at * 11 (N.D. Cal. June 25, 2021) (finding that requested injunction would not preserve the meaningfulness of arbitration, because "a ruling on the preliminary injunction would reclaim for the judiciary a matter assigned by the parties to arbitration by prejudging the question at the center of Plaintiffs' claims") (internal quotation marks and citations omitted). The claim related to Plaintiff's remote work setup even more directly amounts to a request for mandatory injunctive relief in the nature of specific performance, which again would usurp the arbitrator's role. *See Meyer v. Fifth Third Bank*, 842 Fed App'x 104, 106 (9th Cir. 2021) (finding that request for injunction seeking "specific performance" did "not seek to preserve the status quo pending arbitration, but rather to remedy [Defendant's] alleged breach of contract").[4]

---

systems," Dkt. No. 33 at 1. Defendants represent, plausibly, that they have spent "countless hours troubleshooting her alleged connectivity issues," Dkt. No. 13 at 12, and this appears consistent with Plaintiff's own submission, *see* Dkt. No. 4-2 at ¶¶ 102, 110. Given that the tech issues appear to be affecting employees beyond Plaintiff throughout the company, *see id.* at ¶ 106 (describing the "first wave of employees to receive the upgrade"), even beyond whether the requirements for a TRO have been met, it is unclear what Plaintiff wants the Court to concretely order.

[4] As an unpublished Ninth Circuit decision, *Meyer* is not precedent, but may be considered for its persuasive value. *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

This conclusion is bolstered by the nature of the allegations themselves. While Plaintiff describes efforts by the Private Bank to poach (in her view) three clients, the Application recognizes that she did not in the end lose any of these clients, and in each instance the client appears to have made clear that it wants its business to remain with her. The Application also describes various internal processes which appear to have resolved several disputes in Plaintiff's favor with respect to these individuals or entities, who without dispute each had some client relationship with the Private Bank that predated Plaintiff's hiring in October 2020. The Court's point is not that these processes did (or didn't) comply with the contract or meet Plaintiff's expectations based on her pre-hiring discussions with Defendants, since those are the issues to be decided by the arbitrator. But even accepting Plaintiff's characterization of what Defendants are trying to do, it is significant that the main harm asserted—taking clients and damaging client relationships—has not tangibly materialized even though Plaintiff alleges Defendants' wrongful efforts began over a year ago when she was hired.

The one aspect of the requested injunction that does appear to seek to preserve the status quo is Plaintiff's request for an order barring Defendants from "[t]ransferring any client assets from Campbell's care without Campbell's knowledge and client consent," which Plaintiff now seeks to revise to permit such transfers only in response to a "client request." Dkt. No. 33 at 1. But that order is also unwarranted for the reasons discussed below.

The Court next finds that Plaintiff has not shown a sufficient likelihood of success on the merits to warrant the extraordinary relief of a temporary restraining order in aid of arbitration. While Plaintiff characterizes her proposed injunctive relief as straightforwardly tracking the key agreements, the reality is murkier. The parties agree that the key provisions underlying Plaintiff's core claim are set out in a document referred to as the "Side Letter." Dkt. No. 4-2 at 43. The "Shared Clients" provision of that agreement provides as follows, in its entirety:

- As discussed with David Frame, head of the Private Bank in July 2019, clients that you currently share with J.P. Morgan Private Bank will not result in forced partnering or forced consolidation
- The stated approach is for those clients to maintain the current nature of their relationship with the Private Bank and transition assets currently held with you to J.P. Morgan Securities under your care
- Both sides agree to be good partners and look for ways to collaborate going forward while maintaining separate coverage for the client(s).

*Id.*

Concepts like "maintain[ing] the current nature of their relationship," being "good partners and look[ing] for ways to collaborate going forward while maintaining separate coverage," and avoiding "forced partnering or forced consolidation" are not self-explanatory, and are susceptible to varying interpretations, especially in the context of the complex and interrelated company and client relationships described in the Application. The Court agrees with Defendants that "[w]hile Plaintiff repeatedly claims that JPMorgan promised that the Private Bank would not compete for her clients, that language does not appear anywhere in the Offer Letter or separately negotiated Side Letter." Dkt. No. 13 at 12; *compare* Dkt. No. 4-2 at 43. And while Plaintiff now contends that she "used the word 'maintain' to ensure that the Private Bank could not use [her] move to JPMA as an opportunity to expand or change the nature of the limited relationships it had with a handful of [her] high-profile clients," *id.* at ¶ 45, Defendants correctly point out that the document does not include this definition either. Dkt. No. 13 at 12. The arbitrator will have to decide what the parties actually agreed to as a substantive matter, and the Court could see either party prevailing once a full evidentiary record is made. But especially given the observation above that Plaintiff is less seeking to maintain the status quo than asking for an order codifying her view of the merits, the Court finds that Plaintiff has not made the required "clear showing" necessary to warrant the requested extraordinary remedy she seeks as to any of her claims.[5]

Finally, Plaintiff has not shown an imminent likelihood of irreparable harm or that the equities favor entry of the requested injunction. As Defendants point out, Plaintiff alleges that the claimed scheme underlying her lawsuit started by no later than December of 2020, not long after she was hired. Application at 15 ("In December 2020, shortly after Campbell's move to J.P. Morgan, the Private Bank began a secretive back-channel campaign of encroachment on Campbell's relationship with Pro Athlete Client by sending him pitch materials and offering him services for which Campbell was already responsible"). While the Application describes some events that happened more recently, *see, e.g.,* Application at 16, these appear to be along the general lines of the ongoing issues that Plaintiff contends have existed throughout late 2020 and

---

[5] And even were the Court to find "serious questions going to the merits," Plaintiff has not shown that the balance of the equities tips sharply in her favor for the reasons discussed in this order.

2021. While delay in seeking injunctive relief alone does not negate a potential showing of likelihood of imminent harm, it is a factor courts may consider. *See Garcia v. Google*, 786 F.3d 733, 746 (9th Cir. 2015) (district court did not abuse its discretion in finding that plaintiff's several-month delay in seeking an injunction undercut her claim of irreparable harm); *Winter*, 555 U.S. at 22 (preliminary injunction "will not be issued simply to prevent the possibility of some remote future injury") (citation omitted).

And with respect to the overall balance of the equities, the Court is persuaded at this stage by Defendants' explanation that Plaintiff's proposed relief creates the potential for harming clients by requiring Plaintiff's "agreement" or involvement before certain transactions can occur. It is not clear how a "non-disparagement" order would apply to good-faith requests from shared clients for a frank assessment of the nature of the services they are receiving. And even considering Plaintiff's post-hearing proposed revision, it is not clear to the Court that the proposed limitations would be in the interests of the non-party clients at issue, to whom both Plaintiff and Defendants have fiduciary responsibilities. These shortcomings mean that Plaintiff has not clearly shown that the requested injunction meets the public interest requirement, which "primarily addresses impact on non-parties rather than parties." *League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) (citation omitted). And as Defendants pointed out at the hearing, the fact that this case involves a current employee and shared clients distinguishes it from Plaintiff's cases cited in support of her irreparable harm and equities arguments, nearly all of which involved direct competitors or former employees, and none of which involved current employees or shared clients. Dkt. No. 34 at 18; *see also* Application at 27-30.

None of this is to say that the Court has concluded that Defendants (or Plaintiff) will win at arbitration. This is a complex (and apparently messy) high-stakes business dispute that the arbitrator will have to sift through on a fully-developed record. But it is clear to the Court that Plaintiff has failed to justify her request for extraordinary interim relief. The Court encourages the parties to proceed expeditiously to the substance of the agreed-upon binding arbitration proceeding, so that the merits of the dispute can be determined as a matter of actual, not preliminary, relief. If a request for interim relief of some sort arises as the record is developed in

arbitration, the arbitrator is fully capable of assessing and ruling on that request, and nothing has been presented to suggest that an injunction by this Court is necessary to preserve the meaningfulness of that process (which is the narrow issue under the "in aid of arbitration" doctrine).

Accordingly, Plaintiff's *Ex Parte* Application for a Temporary Restraining Order is **DENIED**. As noted in footnote two, Plaintiff's Administrative Motion for Leave to File Revised Proposed Order, docket no. 33, is **GRANTED**.

**IT IS SO ORDERED.**

Dated: 12/15/2021

HAYWOOD S. GILLIAM, JR.
United States District Judge